OLIVER P. HASKELL *versus* EBENEZER ALLEN *&* *al.*

This Court has equity jurisdiction in all suits to compel a specific performance of contracts in writing, made since February 10, 1818, when the parties have not a plain and adequate remedy at law. But where the agreement has been carried fully into effect, and no further act is to be done under it, there can be no decree, under the equity powers of the Court to compel a specific performance of contracts, that other acts for the convenience or security of the parties should be done.

Where the parties agreed in writing under their hands, that a person designated by them should ascertain and mark the lines between their respective estates; and where the service was performed and the lines marked, and the parties occupied according to those lines for several years, when one of them entered beyond the line, thus marked as his boundary, and took timber and wood therefrom, *it was held*, that the party injured thereby could not maintain a bill in equity, either to compel releases of the land beyond the line thus marked, to be given, or to obtain compensation in damages for the injury sustained.

BILL in equity. The facts appear in the opinion of the Court.

*Fessenden, Deblois & Fessenden* argued for the complainants under these general positions.

By the common law the plaintiff is without remedy. *Whitney* v. *Holmes,* 15 Mass. R. 152.

But equity will relieve and decree that such agreement be carried into effect, and the parties be compelled to pass such releases as will effectuate the agreement. 1 Story's *Eq.* § 131; 1 Atk. 10; 1 P. Wms. 726; 1 Swanst. 152; 1 Ves. & B. 23; 2 Story's Eq. § 715, & 80; Jeremy's Eq. 422.

We pray for an injunction; and courts of equity will grant one, where the injury is irreparable. 1 Paige, 447; 1 Litt. 148; 2 Johns. C. R. 463; 2 Story's Eq. § 929; 15 Ves. 138; 17 Ves. 136; 6 Ves. 147.

*F. O. J. Smith,* for the defendant, in support of his demurrer, cited 17 Maine R. 404; Story's Eq. § 72, 73, 74, 616.

And in support of his answer, relied on the original agreement and the report of Lothrop Lewis under it, as conclusive

against the plaintiff's bill; and to show that his remedy is at law, and not in equity.

The opinion of the Court was drawn up by

TENNEY J.—The complainant alleges in his bill, that on the fourth day of January, A. D. 1819, Daniel Haskell, his father, was seised in his own right in fee, of a certain farm in Windham, and consisting of a part of the following described lots of land in the second division of hundred acre lots in said Windham, to wit: five-sixth parts of lot numbered one hundred and twelve, off of the northerly part of said lot, and three-fourth parts of the lot numbered one hundred and twenty, off of the northerly side of said lot, and ten acres, part of lot numbered one hundred and twenty-one, and that said Ebenezer Allen on the same day was seised in his own right in fee of lot numbered one hundred and eleven in the second division of lots in Windham, and adjoining the land of said Daniel Haskell, and that previous to said fourth day of January, disputes and controversies had arisen between the said Daniel Haskell and the defendant, Ebenezer Allen, in regard to the place where the true division line between the respective lots was, and had been run and ought to be; and that similar disputes had also arisen between other proprietors of other lands lying in the vicinity, or adjoining the lots numbered one hundred and eleven and one hundred and twelve; and that those several proprietors on said fourth day of January, entered into a mutual contract under seal, each with the others, that the lines of their several lots should be run in a manner therein stated, according to the proprietors' records, by Lothrop Lewis; and that he should make a concise report of his doings in the premises, and the report and the agreement should be recorded in the office of the Register of Deeds in the County of Cumberland; and said report should forever settle said lines and corners of the lots, and be taken by the contracting parties to be the true lines and corners by them, their heirs and assigns forever. The bill alleges that the lines were run by Lewis in May, 1819, a report made, which, with the original agreement,

was recorded according to the agreement; and also that the father of the complainant, and the defendant, Ebenezer Allen, "did continue to possess, hold, occupy and enjoy their several and respective lots of land in conformity to the report, and survey and award of Lewis," the former until January 28, 1834, when he conveyed to the complainant "by deed of general warranty, the premises so as aforesaid, in the bill of complaint described and set forth," and the latter until the 12th day of January, A. D. 1829, when he conveyed to Nathan Allen, the other defendant, describing the same in his said deed as follows; "a certain piece or parcel of land situated in said Windham, being part of lot one hundred and eleven in second division of one hundred acre lots in said Windham, and being the piece of land, I purchased of Isaac Mayberry and others, the heirs of Thomas Mayberry, deceased, late of said Windham, by sundry deeds at several times, and being the same said Isaac Mayberry has formerly occupied and improved, and being all of said lot, excepting the part, that I conveyed to Edward Cobb, containing fifty acres more or less." The bill further alleges, that after the conveyance made to him by Daniel Haskell, he entered on the land, described in the deed, and peaceably claimed and occupied the same according to the lines run by Lewis. But that Nathan Allen, regardless of said lines, entered upon a portion of the land of the complainant, included within the lines so run and established by Lewis, and cut down and carried away a large quantity of timber and wood, and subverted the soil, and continues to assert a claim to the land by virtue of the deed from Ebenezer Allen. The bill prays that the defendants be decreed to execute deeds of release of all their right, title and interest to any and all lands, to which Daniel Haskell had a claim, according to the lines run and established by Lewis under the agreement, and that Nathan Allen pay a fair value for all the timber by him cut, and damage done. To this bill the defendants put in a demurrer; and also an answer, admitting the agreement and report of said Lewis and recording the same, as alleged in the bill, but denying that any dispute respecting

the division lines between the said Allen and Daniel Haskell was settled or adjusted by virtue of said agreement, or that said Lewis was authorized by the same to run and establish said division line, or ever did so run or establish the same, or assume so to do; or if he did assume so to do, he had no commission or authority therefor, or that the defendants, or either of them, have been bound or affected thereby.

The jurisdiction of courts of equity from a very ancient date extended to decrees for a specific performance of agreements, when the party relying thereon could not otherwise be fully compensated. 2 Story's Eq. 23. This jurisdiction is not dependent upon or affected by the form or character of the instrument. What these Courts seek to be satisfied of is, that in substance the transaction amounts to and is intended to be a binding agreement for a specific object, whatever may be the form or character of the instrument. *Id.* 22. But when the agreement does not show that any further act was contracted to be done, or in contemplation of the parties, it would be absurd to say, that there could be a decree under this head of equity jurisdiction.

Courts possessed of general equity powers, decline the exercise of a jurisdiction, to decree specific performance, when the proper relief is in damages, which can alone be ascertained by a jury, since it is the appropriate function of a Court of law, to superintend such trials. 1 Story's Eq. 89. And when they are authorized to decree specific performance, they will not ordinarily do so, excepting when damages will be an imperfect remedy. 2 Story's Eq. 24.

This Court have equity jurisdiction in all suits to compel specific performance of contracts in writing, made since Feb. 10, 1818, when the parties have not a plain and adequate remedy at law. Rev. Stat. c. 96, § 10. If the complainant is entitled to the decree, that the defendants release to him all their right, title and interest to any and all lands, to which Daniel Haskell had a claim according to the lines run and established by Lewis by virtue of the agreement, it must be under this head of the powers conferred.

It is manifest, that the parties, in order to protect themselves from difficulty which might arise in future from the uncertainty of the boundaries of their respective estates, entered into their mutual agreement of Jan. 4, 1819, that they should be ascertained and marked by the person designated by them. It was not contemplated by them, that the lines to be run would in any degree interfere with their several titles, and no power was given to the person appointed to disregard the then existing legal rights; but he was to run the lines according to the proprietors' records, and erect monuments on the westerly corners of the lots mentioned. The lines were run and marked " pursuant to the submission," and the agreement and report were recorded according to the terms of the agreement. The boundaries ascertained by Lewis were satisfactory to the complainant's father and grantor, and to Ebenezer Allen one of the defendants, as they governed themselves thereby for a long time in their respective occupation. After the agreement and the report was put upon record, the contract which they had entered into to make known and to secure their rights, derived from their respective titles, was perfected. No conveyances or releases were required under the agreement. Each party held and intended to hold under the title, which he had, before the submission. The agreement and the report of the commissioner indicated with certainty, where the real boundaries had been and were to continue. There is nothing in either showing that there was the least deviation from the ancient lines. There is no allegation in the bill, that the lines run gave to the complainant's grantor land to which he had not a title by the deeds under which he claimed. The grantors of the complainant and of the defendant, Nathan Allen, conveyed to them according to the title, which they held before the agreement, and not by any new lines, for it is manifest that one was considered identical with the other. The contract was unlike those, where a deed is to be given by one to carry into effect his contract with another upon a condition which is performed. In such cases a decree of specific performance may be made, if the remedy at law is inadequate. But where no

intention to do any such act can be drawn from the agreement, the limited jurisdiction of this Court as a court of equity will not authorize the decree first prayed for.

The injury complained of in the bill is for cutting and carrying away timber and wood, and subverting the soil. The only remedy for this, which can be obtained, or which is sought, is in damages to be awarded. For these there is a plain and adequate remedy at law.

*Bill dismissed with costs for the defendants.*